Nos. 114,897
114,898

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DAVID G. LUNDBERG
and
MICHAEL L. ELZUFON,
*Appellees*.

SYLLABUS BY THE COURT

1.

Whether jurisdiction exists is a question of law over which appellate courts have unlimited review.

2.

The purpose of the Kansas Securities Act is to provide rigid governmental regulation and control over the promoting and selling of speculative securities in order to protect both investors and the public.

3.

The Kansas Securities Act is patterned after the Uniform Securities Act that, in turn, is modeled after the Federal Securities Act. Accordingly, Kansas courts may look to decisions of federal courts as well as decisions from other states that have adopted the Uniform Securities Act for guidance in interpreting the Kansas Securities Act in an attempt to make its application uniform with other jurisdictions.

1

4.

K.S.A. 17-12a501 makes it unlawful for a person, in connection with the offer, sale, or purchase of a security, to make an untrue statement of material fact or to omit a material fact. It is also unlawful to engage in an act, practice, or course of business that operates as a fraud or deceit upon another person.

5.

Under K.S.A. 17-12a610, Kansas courts have territorial jurisdiction over a person that sells or offers to sell a security in this state. Likewise, Kansas courts have jurisdiction where the purchase or offer to purchase a security is made and accepted in this state. An offer to sell or to purchase a security is made in Kansas—whether or not either party is then present in this state—if the offer originates from within Kansas.

6.

An out-of-state offer originates from Kansas if any portion of the selling process has occurred here or if there is some territorial nexus between the offer and this state.

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed March 3, 2017. Reversed and remanded.

*Thomas E. Knutzen*, deputy director of policy and senior staff attorney, and *Joshua A. Ney*, *Ryan A. Kriegshauser*, and *Christopher D. Mann*, of the Office of the Kansas Securities Commissioner, and *Derek Schmidt*, attorney general, for appellant.

*Richard Ney* and *David L. Miller*, of Ney, Adams & Miller, of Wichita, for appellee David G. Lundberg.

*Kurt P. Kerns*, of Ariagno, Kerns, Mank & White, LLC, of Wichita, for appellee Michael L. Elzufon.

*Zachary T. Knepper*, deputy general counsel, and *A. Valerie Mirko*, general counsel, of North American Securities Administrators Association, Inc., of Washington, D.C., and *Alan V. Johnson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for *amicus curiae* North American Securities Administrators Association, Inc.

Before BRUNS, P.J., MCANANY and BUSER, JJ.

BRUNS, J.:  The State appeals from the district court's decision dismissing 56 counts in each of two 61-count criminal complaints filed against David G. Lundberg and Michael W. Elzufon. The complaints alleged that Lundberg and Elzufon had violated the Kansas Uniform Securities Act, K.S.A. 17-12a101 *et seq.* Specifically, the complaints asserted that Lundberg and Elzufon unlawfully sold—or offered to sell—unregistered securities and committed securities fraud.

The district court consolidated the two cases for preliminary hearing. Prior to the hearing, Lundberg filed a motion to dismiss for lack of territorial jurisdiction because the sales, offers to sell, and purchases occurred outside of Kansas. Elzufon subsequently joined the motion to dismiss and, prior to the completion of the preliminary hearing, the district court dismissed the bulk of the charges against both defendants for lack of territorial jurisdiction. Subsequently, the State voluntarily dismissed the remaining charges in order to appeal the district court's decision.

On appeal, we find that the district court has territorial jurisdiction over these cases pursuant to K.S.A. 17-12a610 because a portion of the securities selling process occurred in this state. Furthermore, we find that there is a sufficient territorial nexus between the actions of Lundberg and Elzufon—as well as that of their limited liability companies—to support jurisdiction in Kansas. Thus, although we take no position on the merits of the criminal charges brought against Lundberg and Elzufon, we reverse the district court's decision to dismiss these cases for lack of territorial jurisdiction, and we remand them to the district court for further proceedings consistent with this opinion.

FACTS

The pertinent facts necessary to resolve the issue of territorial jurisdiction are undisputed, and we can glean them primarily from the stipulation of facts entered into by the parties. In addition, the State supplemented these facts with testimony offered at the preliminary hearing. Because of the limited issue presented on appeal, we will limit our discussion of the facts to those that relate to the issue of territorial jurisdiction.

In January 2005, Lundberg and Elzufon formed a Minnesota corporation called Real Development Corp. Lundberg and Elzufon were listed in filings with the Minnesota Secretary of State as the sole shareholders, officers, and agents of the corporation for the duration of its existence. In May 2008, Real Development Corp. filed a foreign corporation application with the Kansas Secretary of State's Office. Additionally, Real Development Corp. maintained places of business in Minnesota and Kansas.

In April 2006, Lundberg and Elzufon started the first of their four limited liability companies in Kansas, known as Wichita 19, LLC. The second—started in May 2008— was known as 150 WFA, LLC. The third—also started in May 2008—was known as 150 Main, LLC. The fourth—started in June 2008—was known as 150 Main Four Ten, LLC. The organizational documents of the LLCs listed Lundberg and Elzufon as the sole members as well as the managers and agents for each of these limited liability companies.

The parties have stipulated that substantial operations of Wichita 19, LLC, 150 WFA, LLC, 150 Main, LLC, 150 Main Four Ten, LLC, and Real Development Corp. were conducted from places of business in both Minnesota and Kansas. Lundberg and Elzufon were also physically present in Wichita on multiple occasions. In addition, Lundberg and Elzufon issued promissory notes to investors relating to various buildings in downtown Wichita on behalf of Wichita 19, LLC, and Real Development Corp. While

some of the promissory notes stated that Minnesota law would apply to the resolution of disputes, others indicated that the laws of Kansas would apply.

The operation agreement for Wichita 19, LLC, also contained a provision that any legal actions relating to the agreement or to transactions contemplated by the agreement must be brought in the United States District Court for the District of Kansas sitting in Wichita or in Sedgwick County District Court. Further, Lundberg signed at least one of the promissory notes issued to an investor while he was physically present in Sedgwick County. Lundberg and Elzufon also issued a promissory note to an investor who lived in Wichita. Subsequently, they issued another promissory note to the Wichita investor in their personal capacity as well as on behalf of Real Development Corp.

Similarly, Lundberg and Elzufon issued membership interests on behalf of 150 WFA, LLC, to investors. The operating agreement for 150 WFA, LLC, contained a choice of law provision stating that the laws of Kansas applied to disputes arising out of or relating to the agreement. It also contained a provision stating that all legal actions relating to the operating agreement or the transactions contemplated in the agreement must be brought in the United States District Court for the District of Kansas sitting in Wichita or in Sedgwick County District Court.

Real Development Corp., as well as each of the Kansas LLCs, owned interests in assets—in particular, real property—in Wichita. Specifically, the businesses started by Lundberg and Elzufon were engaged in the revitalization of downtown Wichita through investment in and rehabilitation of commercial real estate. From at least 2005 through 2011, the companies offered investment opportunities—including the sale of promissory notes and membership interests—related to their Wichita real estate. Ultimately, Real Development Corp. forfeited its foreign corporation application in Kansas in July 2015, and each of the Kansas LLCs has now forfeited or dissolved its articles of organization.

5

Only one of the investors, Dennis Miller, actually lived in Kansas. Many of the out-of-state investors lived in California. Joseph Tacelli and Tom Martinson, both California residents, and others introduced the California investors to the investment opportunity in Wichita real estate. Tacelli and Martinson received information regarding the investments from Lundberg and Elzufon. In turn, they used this information to solicit investors in exchange for a commission. At some point, Tacelli went to Wichita to meet with Lundberg and Elzufon about the investments. In addition, Tacelli received information evidently faxed to him from the Broadview Hotel in Wichita. According to Tacelli, he obtained approximately 12 investors for one of the Wichita projects and received a commission from Lundberg and Elzufon.

Martinson raised about $800,000 from out-of-state investors and received approximately $120,000 in commissions. Although he believed that some of the investors may have gone to Kansas, he was not sure when this occurred. Specifically, Martinson was involved in the 150 Main project. He explained that Lundberg and Elzufon first sold investment opportunities in the basement and first three floors of the building under the name of 150 Main WFA, LLC. Once a maximum number of investors for these floors had been obtained, they moved on to selling investment opportunities in floors 4 through 10 under the name 150 Main Four Ten, LLC. Martinson also invested personally in the property and visited Wichita with his wife about a year after they invested. According to Martinson, they found that the building renovation was not as promised to them by Lundberg and Elzufon.

On February 10, 2015, the Sedgwick County District Attorney filed separate 61-count criminal complaints against Lundberg and Elzufon alleging violations of the Kansas Uniform Securities Act. The complaints alleged multiple counts of securities fraud and unlawful sale of unregistered securities occurring between December 12, 2005, and December 31, 2011. In particular, the State alleged that investors lost a substantial

6

sum of money as a result of the unlawful activities committed by Lundberg and Elzufon in raising funds to purchase and rehabilitate buildings in downtown Wichita.

On September 29, 2015, Lundberg filed a motion to dismiss the charges for insufficient evidence "because the Defendant's alleged acts were not in connection with the offer, sale, or purchase of a security, as that term is defined under Kansas law." On the same day, Lundberg also filed a motion to dismiss for lack of jurisdiction, arguing that the district court lacked territorial jurisdiction because none of the alleged sales or offers to sell were made or accepted in Kansas. Subsequently, Elzufon orally joined in Lundberg's motion to dismiss for lack of jurisdiction.

The district court commenced a preliminary hearing on November 9, 2015. Although the district court scheduled the preliminary hearing to last a week, it only lasted 2 days before the parties entered into a stipulation of facts relating to the issue of jurisdiction. During the 2 days of the preliminary hearing, the State presented the testimony of 8 witnesses and introduced 40 exhibits into evidence. Each of the witnesses testified regarding their interactions with Lundberg and Elzufon as well as regarding their knowledge of the investment opportunities in the real estate located in downtown Wichita.

On November 12, 2015, prior to the completion of the preliminary hearing, the district court dismissed the majority of the charges against Lundberg and Elzufon for lack of territorial jurisdiction. Although at that point the district court did not dismiss Counts 57 through 61—which related to the sale of alleged securities to Miller, these counts were later voluntarily dismissed by the State so it could go forward with an appeal. We have consolidated the two cases for the purposes of appeal. We also granted a motion filed by the North American Securities Administrators Association, Inc., for leave to file an *amicus curiae* brief.

7

ANALYSIS

*Issue Presented and Standard of Review*

On appeal, the sole issue presented by the State is whether the district court erred in holding that it did not have territorial jurisdiction over these cases alleging violations of the Kansas Securities Act. Both the State—through the Office of the Kansas Securities Commissioner—and the North American Securities Administrators Association, Inc.—which has filed an *amicus curiae* brief in this case—contend that territorial jurisdiction exists in these cases pursuant to K.S.A. 17-12a610 because a portion of the selling process occurred in Kansas. In response, Lundberg and Elzufon contend that their business activities in Kansas did not constitute an "offer to sell" or a "sale" of securities over which Kansas courts have territorial jurisdiction.

Whether jurisdiction exists is a question of law over which we have unlimited review. *State v. Rizo*, 304 Kan. 974, 984, 377 P.3d 419 (2016); *State v. Rupnick*, 280 Kan. 720, 741, 125 P.3d 541 (2005) (whether territorial jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited). To the extent that the resolution of this issue requires statutory interpretation, we apply a de novo standard of review. *State v. Dunn*, 304 Kan. 773, 819, 375 P.3d 332 (2016). Likewise, when the State appeals the dismissal of a complaint, our standard of review is de novo. *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011). Although Elzufon argues in his brief that we should apply a "negative finding" standard of review, we find that the result in this appeal would be the same under either standard. See *Hamel v. Hamel*, 296 Kan. 1060, 1078, 299 P.3d 278 (2013).

*Kansas Securities Law*

In 1911, Kansas was the first state in the United States to enact blue sky laws. See L. 1911, ch. 133, § 1; L. 1913, ch. 141, § 1. By 1933, every state in the union had enacted similar statutes. These acts were intended to protect the public from "'speculative schemes which have no more basis than so many feet of blue sky'" and, as a result, they became known as "'blue sky laws.'" *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 533, 44 P.3d 364 (2002) (quoting 69A Am. Jur. 2d, Securities Regulation State § 1, p. 759 [1993]). "Because securities acts are remedial legislation, they must be liberally construed." See *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 934, 811 P.2d 1220 (1991).

Similarly, Congress passed the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (2012), to regulate the sale of securities nationally. It is important to note, however, that the Federal Securities Act does not preempt the Kansas Securities Act. Instead, the Federal Securities Act expressly allows for state regulation of securities. *Brenner*, 273 Kan. at 533-34. Accordingly, federal and state laws work together to protect the public from the sale of unregistered, fraudulent, and speculative securities.

Among other things, the Kansas Securities Act makes it "unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly" to make untrue statements of material fact or to omit material facts. K.S.A. 17-12a501(2). In addition, it is illegal to engage in fraudulent actions in connection with the sale of a security. See K.S.A. 17-12a501(3). It is also unlawful—subject to certain exceptions—to sell an unregistered security. K.S.A. 17-12a301. Under the Act, a "person" can be "an individual; corporation; . . . limited liability company; association; joint venture; . . . or any other legal or commercial entity." K.S.A. 17-12a102(20).

The Kansas Supreme Court has held "that the legislative intent and purpose for enacting the Kansas Securities Act was to place the traffic of promoting and dealing in speculative securities under rigid governmental regulation and control to protect investors and to prevent, to the extent possible, the sale of fraudulent or worthless speculative securities." *Ridenhour*, 248 Kan. at 934 (citing *State v. Hodge*, 204 Kan. 98, 101, 460 P.2d 596 [1969]); see also *Klein v. Oppenheimer & Co.*, 281 Kan. 330, 332, 130 P.3d 569 (2006). The Kansas Legislature pattered the current version of the Kansas Securities Act—enacted in 2004—after the Uniform Securities Act of 2002 that, in turn, is modeled after the Federal Securities Act. Thus, when interpreting and applying the Kansas Securities Act, we may look to federal decisions as well as decisions from other states for guidance. See *State ex rel. Owens v. Colby*, 231 Kan. 498, 501, 646 P.2d 1071 (1982); *State v. Atteberry*, 44 Kan. App. 2d 478, 489, 239 P.3d 857 (2010).

*Interpretation of K.S.A. 17-12a610*

The Kansas Securities Act also contains what is known as a territorial jurisdiction provision at K.S.A. 17-12a610. Specifically, the statute states:

> "(a) *Sales and offers to sell*. K.S.A. 17-12a301 . . . [and] 17-12a501 . . . do not apply to a person that sells or offers to sell a security unless the offer to sell or the sale is made in this state or the offer to purchase or the purchase is made and accepted in this state.
>
> . . . .
>
> "(c) *Offers in this State*. For the purpose of this section, an offer to sell or to purchase a security is made in this state, whether or not either party is then present in this state, if the offer:
>
> (1) Originates from within this state . . . ." K.S.A. 17-12a610.

As indicated above, courts are to liberally construe the Kansas Securities Act to protect investors and members of the public. *Ridenhour*, 248 Kan. at 934. Although Lundberg and Elzufon argue that we should strictly construe K.S.A. 17-12a610 because this is a criminal case, we note that the Kansas Supreme Court has applied a broad interpretation to a territorial jurisdiction statute in a criminal case. *State v. Grissom*, 251 Kan. 851, 885-89, 840 P.2d 1142 (1992). In *Grissom*, which involved criminal activity occurring in both Kansas and Missouri that led to three murders at an unknown location, our Supreme Court found:

> "A broad interpretation of the territorial jurisdiction statute is consistent with our venue statutes. Although jurisdiction and venue are different, an analogy can be made to the venue statutes. For example, if a crime is committed in two counties, either county has venue. K.S.A. 22-2603. If a crime is committed on or so near the boundary of two counties that it cannot be determined in which county the crime occurred, either county has venue. K.S.A. 22-2604. If the cause of death is inflicted in one county and the victim dies in another county, either county has venue. K.S.A. 22-2611." *Grissom*, 251 Kan. at 889.

Our Supreme Court went on to conclude that there was "evidence from which a jury could find that Grissom committed criminal acts in Kansas which were a substantial and integral part of an overall continuing crime plan and which were in partial execution of the plan." 251 Kan. at 889. We find that a similar rationale applies in cases involving alleged violations of the Kansas Securities Act because alleged violations—or acts in furtherance of a violation—may occur in more than one state. Furthermore, we find the plain language of K.S.A. 17-12a610 is far-reaching and provides for territorial jurisdiction over any person who sells or offers to sell securities where such transaction "originates" in Kansas whether or not either party is present within this state. K.S.A. 17-12a610(c).

11

In interpreting K.S.A. 17-12a610, we also find guidance from the legal authority cited in the *amicus* brief filed by the North American Securities Administrators Association, Inc. (NASAA) in this appeal. The NASAA was formed in 1919 and is a nonprofit association of state, provincial, and territorial securities regulators in the United States, Canada, and Mexico. Its members include the securities regulators from all 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands. Part of the work of the NASAA is to promulgate model rules and coordinate multi-state enforcement actions relating to securities acts.

In its brief, the NASAA shows that the territorial jurisdiction statute codified at K.S.A. 17-12a610 is consistent with the jurisdictional provisions found in the Uniform Securities Act of 2002 and the Uniform Securities Act of 1956. Specifically, the NASAA asserts that all of these provisions confer territorial jurisdiction where a sale or offer to sell a security "originates" from the state. Moreover, the NASAA indicates that 33 states have adopted this language while the remaining states have a similar requirement. However, only a few courts have addressed the issue of what it means for a sale or offer to sell to originate from a state.

The NASAA points us to two cases setting forth tests that courts may use in determining whether a sale or offer to sell a security originates from within a state. In *Newsome v. Diamond Oil Producers, Inc.*, CCH Blue Sky L. Rptr. ¶ 71,869 (Okla. Dist. Ct. 1983), an Oklahoma state court determined that a sale or offer to sell a security originates from a state if "*any portion of the selling process*" has occurred within the state. (Emphasis added.) Subsequently, both the United States District Court for the Middle District of Florida and the United States District Court for the Southern District of Indiana have adopted what has become known as the *Newsome* test. See *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1540 (M.D. Fla. 1989); *Klawans v. E.F. Hutton & Co.*, Case No. IP 83-680-C (S.D. Ind. 1989).

In *Lintz v. Carey Manor Ltd.*, 613 F. Supp. 543, 550 (W.D. Va. 1985), the United States District Court for the Western District of Virginia adopted a similar—although not identical—test. The *Lintz* court found that "so long as there is *some territorial nexus to a particular transaction*, the [security] laws of two or more states may simultaneously apply." (Emphasis added.) 613 F. Supp. at 550 (citing Loss, *The Conflict of Laws and the Blue Sky Laws*, 71 Harv. L. Rev. 209, 242 [1957]). The *Lintz* test was subsequently adopted by the United States District Court for the Western District of Missouri, by the United States District Court for the Western District of Oklahoma, and by the Supreme Court of Colorado. See *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 556 (W.D. Mo. 2014); *Nuveen Premium Income Mun. Fund 4, Inc. v. Morgan Keegan & Co., Inc.*, 200 F. Supp. 2d 1313, 1317-18 (W.D. Okla. 2002); *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1105 (Colo. 1995).

Although the *Newsome* and *Lintz* tests are not identical, they are very similar in that they allow a state not only to protect its own citizens but also to protect against unlawful securities activities from taking place—in whole or in part—within the borders of a state. We find these tests to be consistent with the common meaning of the word *originate*, which is "[t]o bring into being, create" or to "start" something. American Heritage Dictionary, p. 1241 (4th ed. 2006). We also find these tests to be consistent with the requirement under the Due Process Clause of the Fourteenth Amendment to the United States Constitution that a "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); see also *Merriman v. Crompton Corp.*, 282 Kan. 433, Syl. ¶ 18, 146 P.3d 162 (2006) (Defendants should "not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."). Thus, in interpreting K.S.A. 17-12a610, we conclude that a sale or offer to sell a security originates in Kansas if any portion of the selling process has occurred here or if there is some territorial nexus between the offer and the State of Kansas.

In the present case, the record on appeal reflects that Lundberg and Elzufon started the four Kansas LLCs for the purpose of raising funds from investors for the revitalization of buildings located in downtown Wichita. Each of the Kansas LLCs—as well as Real Development Corp.—maintained places of business in Kansas. In particular, the Kansas LLCs and Real Development Corp. had places of business at 105 S. Broadway and 125 N. Market Street in Wichita. The parties have also stipulated that "substantial operations" of these business entities—of which Lundberg and Elzufon were the sole owners, managers, and/or agents—were conducted in both Minnesota and Kansas.

At least some of the promissory notes and membership interests issued by Lundberg and Elzufon stated that Kansas law would apply. One of these promissory notes was signed while Lundberg was physically present in Kansas. Another promissory note was issued to an investor who lived in Wichita. In addition, at least some of the operating agreements for the Kansas LLCs provided that any legal actions relating to them must be brought in either the United States District Court for the District of Kansas sitting in Wichita or in Sedgwick County District Court.

On multiple occasions, Lundberg and Elzufon were physically present in Kansas. Those who were selling the alleged securities on behalf of the Kansas LLCs and/or Real Development Corp. received information regarding the investments as well as commissions from Lundberg and Elzufon. One of these people travelled to Wichita to meet with Lundberg and Elzufon. It also appears that at least some information about the investments was faxed from the Broadview Hotel in Wichita.

Based on the stipulation of the parties as well as the evidence presented during the initial portion of the preliminary hearing, we do not find Lundberg's and Elzufon's

14

connections with Kansas to be random, fortuitous, or attenuated. Rather, we find their connection to Kansas to be purposeful and they should have reasonably anticipated that they might be haled into Kansas court based on their substantial and continuing activities here over the course of several years. We also find that a portion of the selling process of the alleged securities occurred in Kansas and that there is a territorial nexus between Kansas and the alleged violations of the Kansas Securities Act. We, therefore, conclude that the district court has territorial jurisdiction over these cases pursuant to K.S.A. 17-12a610.

Because the district court dismissed these cases before the completion of the preliminary hearing, we do not take a position regarding whether there is sufficient evidence to bind either Lundberg or Elzufon over for trial on any of the charges asserted by the State. Rather, we remand these cases to the district court for reinstatement of the complaints, for completion of the preliminary hearing, and for any further proceedings that may be appropriate.

Reversed and remanded for further proceedings.