Vano, J., concurring:
The posture of the case before the court is somewhat different from most criminal appeals.
*1122 The district court began a preliminary hearing in November 2015. After two days of testimony, the State agreed with Lundberg and Elzufon to a set of stipulated facts to be used in deciding defendants' motions to dismiss for lack of jurisdiction. In addition to the stipulations, the parties agreed that "the Court may consider other evidence received thus far in the Preliminary Hearing in these matters" when ruling on the motion. But, "[t]o the extent the evidence thus far in the Preliminary Hearing conflicts with the stipulations herein, the stipulations shall be controlling."
The stipulations, 20 in number, address the existence of various Kansas LLCs, places of business, choice of law provisions, forum selection clauses, the issuance of promissory notes, and the signature on a single promissory note as well as the purposes for the offerings. The only stipulations regarding meetings and conference calls with potential investors that might come close to insinuating solicitations or "offers" to sell securities were in California, with perhaps one in Colorado. There is no stipulation regarding the place where any offer to sell originated. That is the watershed issue before this court.
There are four principles that guide my thinking and compel this concurrence: First, the traditional separation of powers and role of the judicial branch to lend stability and predictability to the law so that all may guide their conduct and avoid disputes, see Holmes, The Path of the Law , 10 Harv. L. Rev. 457 (1897) ; second, concepts of due process and equal protection embodied in the doctrine of stare decisis and rational bases for distinguishing precedent, see Lambert v. People , 355 U.S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957) ; third, the role of the Legislature to define crimes in Kansas, State v. Rodriguez , 305 Kan. 1139, 1154, 390 P.3d 903 (2017) ; and, fourth, the rule of lenity or strict construction of our penal statutes. United States v. Bass , 404 U.S. 336, 348, 92 S. Ct. 515, 30 L. Ed. 2d 488 (1971) ; State v. Sexton , 232 Kan. 539, 542-43, 657 P.2d 43 (1983).
The appellant raised three issues for appeal. Two issues had to do with the definitions of "sale" and "offer to sell" occurring or originating in Kansas. The third issue was to address whether "multiple sales" were consummated in Kansas.
At a preliminary examination generally, the State does not have to show proof beyond reasonable doubt or introduce all of its evidence. It is required only to show probable cause that a felony occurred, here in Sedgwick County, Kansas, and that the defendants each committed the felony charged in order to be bound over for trial. In reviewing dismissals at the close of preliminary examination, the evidence is usually viewed in the light most favorable to the State. State v. Washington , 293 Kan. 732, 733-34, 268 P.3d 475 (2012). However, on the motion to dismiss for lack of jurisdiction now before the court, the question of law for our review is presented on stipulated facts that the parties agreed to be controlling.
While the court may be offended personally or feel that the greater moral force has been disturbed through the infliction of over $1 million in harm, that is no excuse for us to write a crime that the Legislature did not create. "[I]t is the Kansas Legislature that establishes what constitutes a criminal act in Kansas, not the courts." Rodriguez , 305 Kan. at 1154, 390 P.3d 903 (citing State v. Sexton , 232 Kan. 539, 542-43, 657 P.2d 43 [1983] ). While the court may be called upon to review whether a statute passes constitutional muster or whether a certain set of facts fits the proscribed conduct, or whether a statute charges a crime at all, it should never create the crime to fit the facts. Whenever a court expands a statute it presumes to say the expansion is constitutional and forecloses future litigants in the adversarial process from bringing issues we cannot now fathom or divine-blinded by our own creation-before the court. "Much as we might desire to do so, it is not our function to create a crime where the legislature has not done so." Sexton , 232 Kan. at 544, 657 P.2d 43. "[T]here are no common-law offenses [in Kansas], and there can be no conviction except for such crimes as are defined by statute." State v. Young , 55 Kan. 349, 356, 40 P. 659 (1895).
The court's creation of a crime here would be as unconstitutional as any prohibited ex post facto law. "Indeed, an unforeseeable judicial enlargement of a criminal statute, *1123 applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the United States Constitution forbids." Bouie v. City of Columbia , 378 U.S. 347, 353, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964). "If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." Bouie , 378 U.S. at 353-54, 84 S.Ct. 1697.
In Bouie , the Supreme Court held 6-3 that a South Carolina Supreme Court ruling unconstitutionally deprived the criminal defendants of due process. Justice Brennan wrote the majority opinion, determining that the South Carolina Supreme Court's decision was akin to an ex post facto law. The decision in question construed a statute prohibiting entry onto the lands of another after notice not to enter as prohibiting the act of remaining on the premises after being asked to leave. The South Carolina decision affirmed the conviction of African-Americans who refused to leave a drugstore, but the Supreme Court reversed.
Here, as recognized by the majority, we must first determine legislative intent. What is the Legislature saying shall be punished by criminal sanction in Kansas? That legislative intent must first be obtained, if possible, from the clear language of the statute. State v. Brown , 295 Kan. 181, 193, 284 P.3d 977 (2012) ; Bergstrom v. Spears Manufacturing Co. , 289 Kan. 605, 607, 214 P.3d 676 (2009). Then, if the clear language is still ambiguous, we must apply rules of construction. O'Brien v. Leegin Creative Leather Products, Inc. , 294 Kan. 318, 331, 277 P.3d 1062 (2012). Those rules of construction include the notion that the construed intent must be constitutional. Either way, we must presume that the Legislature intended to adopt a constitutional act.
Likewise, the evaluation of territorial jurisdiction in this case must be done in a constitutional fashion. This includes adherence to the principles of due process and equal protection. The doctrine of stare decisis is a judicial concept that predates our constitutions. It is the equivalent of minimal rational-basis equal protection. This court applies precedent-controlling and persuasive-arising from similar factual circumstances unless it finds some rational distinction.
In interpreting the Kansas Uniform Securities Act (KUSA) provisions at issue in this case, there can be different views on what the terms in the statutes mean, but they cannot be enforced if they are ambiguous. A term or phrase in a statute, contract, or other writing is not automatically ambiguous simply because there is some disagreement regarding its interpretation. Marshall v. Kansas Med. Mut. Ins. Co., 276 Kan. 97, 111, 73 P.3d 120 (2003). But it is helpful to bear in mind at least one of the historic rules of statutory construction in determining how the criminal portions of the KUSA must be interpreted and applied. The primary rule of construction for penal statutes is that they must always be strictly construed against the State and in favor of lenity toward the defendant. State v. Bishop , 215 Kan. 481, 483, 524 P.2d 712 (1974).
Moreover, this court should not add to or take away from the clear legislative intent to proscribe certain conduct, unless the court must do so to salvage constitutionality. Such was the case in State v. Huffman, 228 Kan. 186, 612 P.2d 630 (1980). The Huffman case addressed the issue of grafting a "fighting words" provision into a disorderly conduct statute where it would otherwise be unconstitutional to criminalize words alone. As in Huffman , criminal statutes may be restricted to preserve constitutionality. But the court must exercise caution not to expand criminal statutes given that such statutes are to be strictly construed in favor of the accused. See Bishop, 215 Kan. at 483, 524 P.2d 712.
The best way to ensure that a criminal statute is not expanded beyond the Legislature's intent is to adhere, wherever possible, to the plain language of the statute. This does not mean the court must always morally agree with the results. Obviously, the solicitation to murder, for example, is morally reprehensible. But as recognized by this court in Sexton , it is the Legislature that defines the elements of proscribed conduct, not this court. 232 Kan. 539, 657 P.2d 43. In Sexton , the court could not take a solicitation *1124 and create an "attempted conspiracy" crime. Similarly, the court cannot create a Kansas crime in the present case merely because it disapproves of the behavior of the defendants or takes issue with the injuries their actions may have caused.
The term "nexus" appears nowhere in the KUSA. It certainly does not appear in the criminal statutes of the KUSA. Most pertinent to the present case, the word "nexus" is not mentioned in K.S.A. 17-12a610, the jurisdiction statute here under consideration. The concept of an action being done "in connection with" the crime of general fraud under K.S.A. 17-12a501 is still controlled by the territorial jurisdiction statute, K.S.A. 17-12a610. Any action must fall within the recognized and intended parameters of that statute to be considered a Kansas crime under the KUSA.
Likewise, merely issuing a security is not the crime before this court. Indeed, there appears to be no requirement that an actual entity issue any security for these criminal sanctions to apply. The corporate entity is not the defendant before the court. That may be a different case with different issues. The corporate entity is a different legal person. Here, the charges are against two individual persons specifically, for selling or offering to sell, and for fraud in those sales or offers, to specific individuals.
Finally, the voluntarily dismissed counts are not ours for consideration. In a similar vein, whether any other jurisdiction can or does decide to prosecute or not is not the issue before us.
The two substantive statutes under which these defendants are charged are, first, the "securities registration" requirement in K.S.A. 17-12a301, and second, the "general fraud" proscription in K.S.A. 17-12a501.
Both of these statutes and all of the factual allegations in the underlying complaint relate to sales, offers to sell, or fraud in the same. All are covered by the criminal penalty statute of the KUSA, K.S.A. 17-12a508. This provision defines the multiple counts charged here as nonperson felony offenses. It further assigns different severity levels and potential prison terms depending on the respective amounts of the alleged loss. None of this is germane to the issue before this court, other than to establish that the underlying allegations were for crimes, not merely civil wrongs.
Again, both of these statutes must comply with the jurisdiction statute in order to be Kansas crimes. K.S.A. 17-12a610 provides, in pertinent part, the following:
"(a) Sales and offers to sell. K.S.A. 17-12a301 ... [and] 17-12a501 ..., and amendments thereto, do not apply to a person that sells or offers to sell a security unless the offer to sell or the sale is made in this state or the offer to purchase or the purchase is made and accepted in this state.
....
"(c) Offers in this state. For the purpose of this section, an offer to sell or to purchase a security is made in this state, whether or not either party is then present in this state, if the offer:
(1) Originates from within this state; or
(2) is directed by the offeror to a place in this state and received at the place to which it is directed."
The problem in this case is that both the Court of Appeals and the dissent want to shoehorn an admittedly offensive fact pattern into this jurisdictional statute to support a Kansas prosecution. But it is simply not covered by the language of the statute.
The Legislature knows the term "issue" when it refers to securities. See, e.g., K.S.A. 17-12a102(17) (regarding issuers). It did not include reference to issuance of unregistered or fraudulent securities in the statutes under which these allegations are brought. It limits the criminal sanction to sales or offers to sell originating within the state.
When it uses the term "originates," it is specifically in regard to the offer , and nothing more. A board may decide to issue securities, e.g., in different classes, but restrain the sale or any offering. They may be held for executive bonuses, buyouts, or parachutes. Then again, the proscription against criminal fraud or that regarding unregistered securities could originate within a state-without either party to the sale or offer to *1125 sell being present-regardless of the corporate decision to issue. For example, solicitations could be generated here or calls could be routed through a Kansas business office. Furthermore, it seems the offer could be published or broadcast from within a particular state to reach an audience outside of that state and not offend the jurisdictional limitation. K.S.A. 17-12a610(e). There is nothing clearly in the statute that joins origination of a sale or offer to sell to the issuance of a security or the existence of any actual corporate entity here. Mixing the two actions by judicial fiat is akin to legislating a different statute. Again, there is no "nexus" term in the statute on jurisdictional reach. The "origination" is only in regard to the offer to sell. That is the gatekeeper in this case.
If we are going to construe originating a sale to include the formation of a Kansas entity, or a decision of that entity to issue a security, or a solicitation that purports to use proceeds in Kansas, the court might as well not stop there, but fully broaden the scope of our criminal reach and consider that any seller or person who offers to sell unregistered or fraudulent securities anywhere, as long as they happen to have been born in Kansas, should be prosecuted here because he or she-the offeror or the seller-"originated" here. Where would we stop in construing the reach of our statutes?
Sales and offers to sell require at least two parties, hence the reference made to "whether or not either party is then present" in Kansas. (Emphasis added.) K.S.A. 17-12a610(c). Thus, an "offer" must be complete such that one can accept it from the other, regardless of how many times it may change before closing. This statute is a specific jurisdictional statute for actions, civil and criminal, under the Kansas version of the securities act. It is unlike the general criminal territorial statute, K.S.A. 2018 Supp. 21-5106, where any part of a criminal enterprise occurring in or directed into Kansas subjects one to Kansas law and penal sanction. State v. Grissom , 251 Kan. 851, 889, 840 P.2d 1142 (1992).
Origination has to do with the sale or offer to sell-one party to another-not the issuance of the security or any corporate entity action, purpose, or existence whatsoever. If the Legislature intended a broader jurisdictional reach, it could have just as easily said "had any connection whatsoever to this state, including but not limited to issuance of the security" or even used the word "nexus" in its adaptation of the uniform act's jurisdictional statute. It did not. Indeed, looking to the KUSA as a whole, specifically including issues of publication and broadcasting not directly applicable in this criminal action, it is clear that the Legislature did not try to reach everywhere and every instance of communication to or from Kansas. K.S.A. 17-12a610(e). We must not confuse civil enforcement, state-to-state civil relations, international cooperation, or the construction and purposes of the KUSA overall with the specific concept of criminal enforcement at issue here. Again, penal statutes must be strictly construed.
The Court of Appeals opinion in State v. Lundberg , 53 Kan. App. 2d 721, 731, 391 P.3d 49 (2017), does appear to be the only Kansas case to address "originates" in this context. But Lundberg 's exclusive focus on a portion of the definition for "originate" is too broadly applied, particularly contrasting it with the concept of "nexus." What the Lundberg panel seems to have gotten away from is that the term "originates" refers back to the "offer," not the company behind the offer or representations as to where the proceeds might be used. Looking to the stipulated facts in the present case, the "offers" did not occur or originate in Kansas, they occurred or originated in California, Colorado, Minnesota, or elsewhere.
This seems further true when looking at the concept of "nexus." Black's Law Dictionary 1255 (11th ed. 2017) defines "nexus" as "n. (17c) 1. A connection or link, often a causal one." Just on its plain language, "originate," the word the Kansas Legislature actually used, has to mean something different from "nexus," which the Legislature did not use. For an offer to "originate" in Kansas, the offer would have to begin to exist here, be produced here, be initiated here. But for an offer to have a mere "nexus" (i.e., a connection or link) to Kansas seems a far more tenuous connection. In the present *1126 case, the offers at issue might seem to have a "nexus" to Kansas, sure, but also California, Minnesota, Colorado, or any number of other jurisdictions. They just did not originate here.
The KUSA, with respect to the sections under consideration, is based upon the Uniform Securities Act, including the very same "originates" provision. The comments to that provision of the Uniform Securities Act indicate the underlying theory to be that the state in which the offer originates should not be used as a "base of operations" for defrauding persons in other states. The comment, not controlling, is broad in its sweep and may be helpful in guiding a civil enforcement. It is just too broad for Kansas criminal application.
Admittedly, many have struggled with the problems caused by dual purpose, i.e., civil regulation and criminal sanction, legislation. See Marx, How to Construe a Hybrid Statute , 93 Va. L. Rev. 235 (2007). We have had no problem with civil and criminal distinctions in Kansas thus far. Why would we anticipate any regarding securities? Would we be expecting to allow a criminal defendant in a securities act prosecution to be called by the State as a witness against himself or herself simply because the case is based upon a hybrid statute? Or, would we abandon proof beyond a reasonable doubt or a unanimous 12-person jury verdict simply because the same conduct could be the basis for a lawsuit seeking civil remedies in equity or damages? We have different numbers of peremptory challenges in civil versus criminal trials. And we even have the right to grand jury indictment or a preliminary examination, such as in this case, on a criminal complaint. Although those are not issues before the court upon which we can decide today, they illustrate some distinctions between civil and criminal that did not magically disappear when the Legislature adopted the KUSA. There is no reason here to blend the civil/criminal construction rules and abandon longstanding precedent. Remedial statutes may be liberally read and applied. Criminal or penal statutes must be strictly or narrowly read and applied with lenity toward the accused. The Legislature, not the court, must clearly define what it intends to be criminally sanctioned in Kansas in the first instance.
Indeed, even in civil cases, courts in other jurisdictions have sometimes refrained from interpreting securities act jurisdiction provisions as broadly as the State urges in this case. For example, we consider as illustrative the court's interpretation of a comparably worded New Mexico securities statute, N.M.S.A. § 58-13B-54(C) (repealed 2009) and the California Corporations Code § 25008. See, e.g., Genesee Cty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3 , 825 F. Supp. 2d 1082, 1139 (D.N.M. 2011) (recognizing that many of the acts and conduct occurred in substantial part in New Mexico, the offering corporations were headquartered there, and defendants conducted business there, yet finding no jurisdiction); see also Lubin v. Sybedon Corp. , 688 F. Supp. 1425, 1460-61 (S.D. Cal. 1988) ; In re Activision Sec. Litig. , 621 F. Supp. 415, 431-32 (N.D. Cal. 1985) (declining to certify a class for claims of certain buyers who purchased publicly traded "over the counter" stock that could be perceived to have "originated" in California but was offered and purchased elsewhere); Greene v. Horizon/CMS Healthcare Corp. , No. CIV 97-114JP/DJS, 1998 WL 2030956, at * 8 (D.N.M. 1998). Those other courts found that having headquarters in a state or even transacting a majority of the business in a state is not enough to automatically establish that any offer "originates" from that state.
Kansas courts, in the civil context, have interpreted the KUSA provisions liberally and have recognized that Kansas has a strong interest in regulating securities that emanate from within its borders. Clearly, the Kansas Legislature's use of the term "originates" allows for something beyond the literal in-state contemporaneous presence of an individual offeror and/or offeree. But the "nexus" concept adopted by the Court of Appeals and the dissent takes it too far in the criminal prosecution, extending it beyond "originates" into something far more tenuous, including the precursor actions. For an offer to originate, it must be complete at origination and not simply a thought, precursor, *1127 or partial step, but already an "offer" that could be accepted-even if it changes multiple times-in order to offend the KUSA criminal proscriptions.
The Court of Appeals noted that "originate" means to bring into being, create, or start something. Lundberg , 53 Kan. App. 2d at 731, 391 P.3d 49. The defendants are alleged to have promulgated a speculative or fraudulent security related to Kansas LLCs, and the promotions thereof claimed to be raising funds to spend on some Wichita renewal project.
This construction of the "originates" provision is consistent with a remedial purpose of the Act as a whole. That is perfectly fine in the civil enforcement context and regulation of securities. This court has stated that the purpose of the KUSA "was to place the traffic of promoting and dealing in speculative securities under rigid governmental regulation and control to protect investors and to prevent, to the extent possible, the sale of fraudulent or worthless speculative securities." (Emphasis added.) State ex rel. Mays v. Ridenhour , 248 Kan. 919, 934, 811 P.2d 1220 (1991). Accordingly, to hold that the promotion of information-which eventually results in the purchase of a security in another state-is an "offer" which originated in Kansas would not be inconsistent with the purpose of the Act in the civil enforcement context . Such promotion of information would seem to be fairly encompassed by the civil enforcement portions of the Act, at least in cases in which the dissemination of such information was apparently intended to result in the purchase of securities.
Significantly, Ridenhour -cited below by the Court of Appeals in this case-was a civil enforcement case, not one launched by a criminal complaint like Lundberg . Ridenhour , 248 Kan. at 920, 811 P.2d 1220. Indeed, even the case precedent the dissent relies upon uses civil case rationale. And yet, under Kansas law, a statute prescribing a criminal penalty-as in this case clearly impacting liberty interests of individuals and not merely the regulation of securities-must be strictly construed against the state/government entity seeking to enforce it and in favor of the person against whom it is being asserted. State ex rel. Stephan v. Pepsi-Cola Gen'l Bottlers, Inc. , 232 Kan. 843, 846, 659 P.2d 213 (1983) ; Bishop , 215 Kan. at 483, 524 P.2d 712.
Here, applying strict construction, or indeed plain reading alone, "offers" made "in this state" or that "originate from within this state" would have to mean just that, without any departure into a "nexus" or "some part of the underlying transaction" analysis. We are not reading anything out of the statute nor are we reading anything into the statute for criminal prosecution. We need only read the words adopted by the Legislature.
Yes, Kansas courts recognize that statutes that are remedial in nature are to be liberally construed. Smith v. Marshall , 225 Kan. 70, 75, 587 P.2d 320 (1978) ; Byrd v. Kansas Dept. of Revenue , 43 Kan. App. 2d 145, 153-54, 221 P.3d 1168 (2010), aff'd 295 Kan. 900, 287 P.3d 232 (2012). Indeed, the Court of Appeals rested on Ridenhour for the pivotal proposition that "securities acts are remedial legislation." Lundberg , 53 Kan. App. 2d at 727, 391 P.3d 49 (citing Ridenhour, 248 Kan. at 934, 811 P.2d 1220 ). But because Ridenhour involved a civil enforcement rather than a criminal one, it was not "penal." If the securities statute is being enforced in a penal fashion, as indeed it would seem to be here, it needs to be strictly construed and narrowly-not expansively-read. Reliance upon Ridenhour is misplaced.
Although the dissent is remarkable and nearly persuasive, it still goes too far in adding a penal reach that is not expressed by the Legislature and is inconsistent with Kansas precedent on reading, construing, and applying criminal statutes and sanctions strictly in favor of the accused, and keeping the court out of the business of drafting legislation-particularly penal sanctions.
I agree with the majority and would reverse the Court of Appeals and affirm the trial court.