Per Curiam:
*1115 The State filed many criminal charges of selling or offering to sell unregistered securities and committing fraud in selling or offering to sell securities against Minnesota residents David Lundberg and Michael Elzufon. Lundberg and Elzufon, as principals for Kansas limited liability corporations, sold what the State alleges to be securities by using intermediaries who resided in California. These California intermediaries made sales presentations in California and sold the securities from California to individuals who did not reside in Kansas.
In this appeal, we must determine whether the Kansas Uniform Securities Act (KUSA), K.S.A. 17-12a101 et seq., allows Kansas courts to exercise jurisdiction over the criminal charges against Lundberg and Elzufon. Jurisdiction to prosecute the criminal charges depends on whether "the offer to sell or the sale [was] made in this state or the offer to purchase or the purchase [was] made and accepted in this state." K.S.A. 17-12a610(a). Considering the facts as stipulated to by the parties, we hold neither an offer to sell nor a sale of securities occurred in Kansas.
FACTS AND PROCEDURAL HISTORY
Lundberg and Elzufon formed Real Development Corp., a Minnesota corporation they registered to do business in Kansas. They formed the corporation to develop properties in downtown Wichita. They were the officers, sole shareholders, and agents during its existence. Real Development maintained places of business in Minnesota and Kansas.
Lundberg and Elzufon also formed four Kansas LLCs. Lundberg and Elzufon were the sole members of each, and they acted as the managers and agents of the LLCs. These LLCs conducted substantial operations from Real Development's place of business in Minnesota, although Lundberg and Elzufon often acted for these businesses while in Kansas and they maintained a place of business in Kansas. The Kansas LLCs issued promissory notes and membership interests. The State alleges these notes and membership interests-representing the buyers' investments-are securities under the KUSA.
Lundberg and Elzufon recruited California intermediaries who were responsible for finding investors. In return, the intermediaries received a percentage of the sale price of any security sold as a result of his or her efforts. These California intermediaries hosted real estate seminars and roundtables in California at which they made presentations. From Minnesota, Lundberg and Elzufon provided *1116 some information and materials included in these presentations, but the intermediaries prepared the actual presentations. One intermediary formed his own LLC for the purpose of selling the investment.
Each investor's first contact was through a California intermediary, but the investors also received binders of materials from either the Kansas LLCs, Real Development, or both. None of these materials were sent from Kansas. Investors purchasing securities issued by the Kansas LLCs wired funds to bank accounts in Minnesota. All the investors whose claims are at issue were located outside Kansas when they accepted the offers at issue. All but one investor was a California resident; the one exception was a Colorado resident. Lundberg, Elzufon, or both, while in Minnesota, signed the documents reflecting the transactions at issue.
The State, in separate but identical complaints, charged Lundberg and Elzufon with 61 counts. In one count, the State alleged Lundberg and Elzufon violated K.S.A. 17-12a501(3), which makes it illegal to commit fraud or deceit when offering, selling, or purchasing of a security. The State alleged Lundberg and Elzufon committed "a fraud on at least 60 persons, ... resulting in a loss of at least $1,000,000 or more." The State also charged six counts of selling an unregistered security under K.S.A. 17-12a301. In the remaining 54 counts, the State charged Lundberg and Elzufon with violating K.S.A. 17-12a501(2), which makes it illegal to make a false statement of a material fact or to omit a material fact when offering, selling, or purchasing a security.
Lundberg and Elzufon filed separate motions to dismiss for lack of jurisdiction, arguing neither the offers to sell, the sales, the offers to purchase, nor the purchases were made or accepted in Kansas. Instead, according to Lundberg and Elzufon, the sales and offers to sell at issue in this appeal took place in California and the sales and offers to sell were between the individual investors and one of the intermediaries, not Lundberg or Elzufon. In contrast, the State contended that the "offer" came from the various "issuers"-the Kansas LLCs-rather than from one of the intermediaries. Because the issuers were Kansas entities, the offer originated from Kansas, supporting territorial jurisdiction in Kansas. According to the State, the Legislature intended this outcome because it wanted to prevent the state from being used as a base for fraudulent activity.
The district court judge granted the motion to dismiss 56 of the counts-the counts related to the sales involving the California intermediaries. The district judge found that jurisdiction over these counts turned on the identity of the offeror. He relied on the Black's Law Dictionary 1081 (6th ed. 1990) definition of "offer" as "to present for acceptance or rejection" and concluded the California intermediaries, acting in California, were the ones presenting the sale of the investments for acceptance or rejection. He also emphasized the offers made by one intermediary that purported to be made by that intermediary's investment LLC rather than any of the Kansas LLCs or Real Development. The district judge rejected the State's argument that any of the offers originated within Kansas. After this ruling, the State voluntarily dismissed the remaining charges to appeal the district judge's decision rejecting territorial jurisdiction over the 56 remaining counts.
A panel of the Court of Appeals reversed. State v. Lundberg , 53 Kan. App. 2d 721, 733, 391 P.3d 49 (2017).
The panel analyzed the jurisdictional question applying language from Lintz v. Carey Manor Ltd. , 613 F. Supp. 543, 550 (W.D. Va. 1985), and Newsome v. Diamond Oil Producers, Inc. , CCH Blue Sky L. Rptr. ¶ 71,869 (Okla. Dist. Ct. 1983). The panel noted that in Newsome , an Oklahoma state court held "that a sale or offer to sell a security originates from a state if 'any portion of the selling process ' has occurred within the state." Lundberg , 53 Kan. App. 2d at 730, 391 P.3d 49. The panel also relied on a statement from Lintz that " 'so long as there is some territorial nexus to a particular transaction , the [security] laws of two or more states may simultaneously apply.' " Lundberg , 53 Kan. App. 2d at 730, 391 P.3d 49 (quoting Lintz , 613 F. Supp. at 550 ).
*1117 The panel held that the sales originated in Kansas and thus Kansas had territorial jurisdiction. The panel emphasized Lundberg and Elzufon formed Kansas LLCs to raise funds to revitalize properties in downtown Wichita. The panel noted some promissory notes and membership interests included Kansas choice-of-law clauses and some LLCs' operating agreements contained forum-selection clauses designating federal or state courts in Sedgwick County. The panel also emphasized Lundberg's and Elzufon's other Kansas contacts not directly related to the offers of sale or sales at issue. See 53 Kan. App. 2d at 732, 391 P.3d 49.
We granted Lundberg's and Elzufon's petitions for review, providing our jurisdiction under K.S.A. 60-2101(b).
ANALYSIS
Lundberg and Elzufon argue the Court of Appeals erred because Kansas courts lack jurisdiction to pursue criminal charges against them under the KUSA. They cite K.S.A. 17-12a610(a), titled "Jurisdiction; Sales and offers to sell" and providing that K.S.A. 17-12a301 and 17-12a501, among other statutes, "do not apply to a person that sells or offers to sell a security unless the offer to sell or the sale is made in this state or the offer to purchase or the purchase is made and accepted in this state."
Standard of review
This issue of jurisdiction presents a question of law over which we exercise unlimited review. State v. Rupnick , 280 Kan. 720, 741, 125 P.3d 541 (2005).
To determine whether jurisdiction exists, we must interpret the KUSA. Statutory interpretation is also a question of law subject to unlimited review. We begin our analysis with the touchstone of statutory interpretation: legislative intent. The best and safest rule for discerning this intent is the plain language of the statute. Only when the statutory language is unclear or ambiguous do we move on to consider tools of statutory construction. State ex rel. Secretary of DCF v. Smith , 306 Kan. 40, 48, 392 P.3d 68 (2017).
KUSA background
Kansas has historically been an early adopter of laws regulating securities. It was the first state to adopt a securities act, passing the first such laws in 1911. 12 Blue Sky Law § 1:1 (2018). The purpose of this early law and its successor statutes was " 'to place the traffic of promoting and dealing in speculative securities under rigid governmental regulation and control to protect investors, thereby preventing, so far as possible, the sale of fraudulent and worthless speculative securities.' Activator Supply Co. v. Wurth, 239 Kan. 610, Syl. ¶ 1, 722 P.2d 1081 (1986)." Brenner v. Oppenheimer & Co. , 273 Kan. 525, 543, 44 P.3d 364 (2002).
Effective July 1, 2005, Kansas adopted the 2002 Uniform Securities Act (USA) promulgated by the National Conference of Commissioners on Uniform State Laws (NCCUSL). See Klein v. Oppenheimer & Co. , 281 Kan. 330, 331, 130 P.3d 569 (2006). The purpose of the uniform act, and in turn the KUSA, remains the same as the earlier Kansas statutes. See NCCUSL, Uniform Securities Act, Prefatory Note ("It is not intended that adoption of a new Uniform Securities Act will reject earlier case decisions interpreting identical or substantively identical sections of [earlier acts] unless specifically so stated in the Official Comments."). Uniform laws "are adopted to remove doubts as to controlling rules of law on the subjects involved and are intended to secure not only identity of the statute, but also uniformity in decision." In re Estate of Reed , 233 Kan. 531, 540-41, 664 P.2d 824 (1983).
We thus often look to decisions from other courts as persuasive authority when interpreting uniform laws. This can be helpful when, as here, no Kansas case has addressed a statute. On the issue now presented, however, we find no case precisely on point with the facts here. As a result, we focus on the plain language of the KUSA and explore the limited guidance we can glean from the caselaw of other jurisdictions. We thus begin by looking more in depth at the elements of each crime charged, as those crimes are defined in the KUSA.
*1118 KUSA as applied here
In six counts, the State charged Lundberg and Elzufon with violating K.S.A. 17-12a301 by selling an unregistered security. The KUSA regulates securities by making it unlawful for a person to offer or sell a security in the state unless at least one of three conditions is satisfied: (1) the security is a federally covered security, (2) the security, transaction, or offer is exempt from registration, or (3) the security is registered under the KUSA. K.S.A. 17-12a301 ; see also K.S.A. 2018 Supp. 17-12a302 (notice filing); K.S.A. 2018 Supp. 17-12a303 (registration by coordination); K.S.A. 17-12a304 (registration by qualification). These provisions apply only if a security is at issue. In their motions to dismiss, Lundberg and Elzufon challenged whether the interests underlying the charges here are securities under the KUSA. See 12A Blue Sky Law § 10:9. The district court did not reach this question and it is not before us. We therefore assume, without deciding, that the notes and membership interests underlying the charges here are securities under the KUSA.
The State also charged Lundberg and Elzufon with many counts of fraud. The antifraud provisions of the KUSA make it unlawful "in connection with the offer, sale, or purchase of a security , directly or indirectly" to commit one of three types of fraudulent acts. (Emphasis added.) See K.S.A. 17-12a501. The State charged Lundberg and Elzufon with two of the three possible types of fraudulent acts, specifically those that make it unlawful:
"(2) to make an untrue statement of a material fact, or omit to state a material fact necessary in order to make a statement made, in the light of the circumstances under which it is made, not misleading; or
"(3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person."
The Legislature has assigned crime severity levels for intentional violations of the registration requirements of K.S.A. 17-12a301 and the antifraud provisions of K.S.A. 17-12a501 based on the amount of loss caused by action. See K.S.A. 2018 Supp. 17-12a508(a)(2), (3).
Jurisdiction under KUSA
Next, we must consider the interplay of these elements with the KUSA's jurisdiction provision, K.S.A. 17-12a610. The jurisdiction statute divides into two broad categories: Subsection (a) is titled "Sales and offers to sell" and subsection (b) is titled "Purchases and offers to purchase." See K.S.A. 17-12a610(a), (b). The parties here focus on the sales and offers to sell category, apparently conceding that any purchases or offers to purchase were not made within Kansas. We, therefore, limit our analysis to sales and offers to sell. This analysis covers all counts-those charged under both K.S.A. 17-12a301 and K.S.A. 17-12a501 -because those statutes encompass sales and offers to sell. As noted earlier, under K.S.A. 17-12a610(a) (jurisdiction), neither K.S.A. 17-12a301 (unregistered security) nor K.S.A. 17-12a501 (fraud) "apply to a person that sells or offers to sell a security unless the offer to sell or the sale is made in this state or the offer to purchase or the purchase is made and accepted in this state." K.S.A. 17-12a610(a).
We thus must determine whether either (a) each sale to an out-of-state resident was made in Kansas or (b) each offer to sell extended to an out-of-state resident by a California intermediary originated in Kansas. Under the stipulated facts, nothing distinguishes the territorial jurisdiction issues of one count from another and thus our conclusion about one count applies to all. We hold on the facts here that the sales were not made in Kansas nor did the offers to sell originate in Kansas. We therefore also consider and reject the Court of Appeals nexus analysis.
Sales
In parsing the plain language of K.S.A. 17-12a610 and its focus on sales and offers to sell, an essential first step is to consider the statutory definition of "sale." It includes "every contract of sale, contract to sell, or disposition of, a security or interest in a security for value." K.S.A. 17-12a102. As *1119 other courts have applied this definition "a general rule seems to be emerging that holds a sale is considered to have taken place when an investor is required to make an investment decision." 12A Blue Sky Law § 10:6. In private placements, such as those at issue, the sale generally occurs when the seller accepts the investor's subscription agreement. 12A Blue Sky Law § 10:7. But sales of a security can involve a continuing process, involving steps such as paying consideration, notifying the purchaser the offer has been accepted, and delivering the security. 12A Blue Sky Law § 10:7. If any of these steps occurs in Kansas, Kansas has jurisdiction under the KUSA.
We therefore consider the sales processes alleged here to determine whether any step in that process occurred in Kansas. A review of the stipulated facts shows the following activity: All investment decisions, as reflected by the acceptances of the offered securities, involved in the remaining charges occurred outside Kansas; the Kansas LLCs acceptances were executed outside Kansas; purchases were made by sending funds to Minnesota bank accounts; and paperwork evidencing the sale was signed in Minnesota and sent to investors from somewhere outside Kansas. We see no step in the sales process that occurred in Kansas even though we acknowledge any number of these acts outside Kansas were engaged in by Lundberg or Elzufon on behalf of the Kansas LLCs. For these reasons, we conclude no jurisdiction exists based on a sale occurring in Kansas.
Offers of sales
This leaves whether any offer to sell was made in Kansas. Just as we first looked to statutory definitions when considering whether there had been a sale in Kansas, we now consider how the KUSA defines an "offer to sell." That term includes "every attempt or offer to dispose of, or solicitation of an offer to purchase, a security or interest in a security for value." K.S.A. 17-12a102(26). This definition is broad, raising at least three considerations.
First, the words "every attempt" and "solicitation" make the concept of an offer in the securities context broader than it is understood in contract law. As a result, more actions could qualify as an offer under the KUSA than under Kansas law relating to contracts. See 12A Blue Sky Law § 10:3 ("Even the most casual reading of these Sections [regarding offers to sell] indicates that they are much broader than the common-law contracts' definitions of these terms learned in the first year of law school or found in the Uniform Commercial Code."); see also Kreis v. Mates Inv. Fund, Inc. , 473 F.2d 1308 (8th Cir. 1973) ("Common law contract concepts, where supplanted by [the Missouri Uniform Securities Act], obviously no longer control in the applicable areas.").
Second, the same words make it "evident that it is extremely easy to make an offer very early in the sales or negotiation process." 12A Blue Sky Law § 10:4. In People v. Jacques , 137 Cal. App. 2d 823, 291 P.2d 124 (1955), for example, the court rejected an argument that correspondence was merely an agreement to agree and thus not an offer. "Even an agreement to reach an agreement to sell stock would be, at least an 'offer to sell' which is prohibited." 137 Cal. App. 2d at 832, 291 P.2d 124.
Third, more than one offer may occur during the sales process of a single security. Thus, even if an intermediary handles much of the process, jurisdiction may be extended if there is a direct communication between the purchaser and the offering company at any point. A California Corporation Commission interpretative opinion illustrates. The opinion first considered whether a California corporation offering private placements through its wholly owned subsidiary in Washington, D.C., made an offer under California securities law. The D.C. subsidiary contacted potential investors, sent documents, received executed documents, and accepted and received checks in an escrow account in D.C. The Commissioner found no California offer on these facts. But the Commissioner distinguished these facts from those in which an investor reached out to contact the general partner in California. This contact, the Commissioner concluded, was a new offer to which the California Act would attach. See 12 Blue Sky Law § 4:34 *1120 (discussing California Corporation Commission Interpretative Opinion No. 81/10C, 11 Cal. Corp. Comm'n Official Op., 1981 Cal. Sec. LEXIS 1 [Nov. 12, 1981] ); see also 12 Blue Sky Law § 4:36 ; 12 Blue Sky Law § 4:33.
In sum, the KUSA defines "offer to sell" more broadly than that concept is understood in contract law or under the Uniform Commercial Code. An offer to sell can occur once or multiple times during the sales or negotiation process of a single security. Each concept theoretically makes it easier for the State to establish jurisdiction.
Moreover, another portion of the jurisdiction statute broadens the potential for jurisdiction over an offer of sale even more. That portion specifies that an offer to sell is "made in this state, whether or not either party is then present in this state, if the offer (1) [o ]riginates from within this state ; or (2) is directed by the offeror to a place in this state and received at the place to which it is directed." (Emphasis added.) K.S.A. 17-12a610(c). Webster's New World College Dictionary (5th ed. 2016) defines "originate" as a transitive verb meaning "to bring into being; esp., to create (something original); invent," or as an intransitive verb meaning "to come into being; begin; start."
Consistent with the State's argument, the authors of a treatise on Blue Sky Laws explain the reason for this broad grant of jurisdiction arises from a state's interest in preventing its territory from being the base for illegal sales. 12 Blue Sky Law § 4:25. They cite notable examples of states serving as a base for boiler room operations where calls were made all over the country, causing reputational harm to those base states. They emphasize the importance of conferring jurisdiction where the offeror is located because often the securities officers in the offeror's state are better positioned to discover and halt such unscrupulous practices. 12 Blue Sky Law § 4:30.
As the treatise authors discuss, Kansas certainly has an interest in not serving as a base of operations for fraud. But even under the expansive reading permitted by the definition of "offer to sell" in the KUSA, Kansas' jurisdiction does not extend as far as the State argues. Instead, it is statutorily limited to situations in which the offer originates within the territorial boundaries of Kansas. This is true no matter whether the offer to sell is an attempt or a solicitation, no matter how early in the process it occurs, and no matter whether it is just one of several steps. The cases cited in the Blue Sky Law treatise found jurisdiction when the calls-the offers-were made from the geographic territory of the state or when the calls were received within the territorial limits of a state. See 12 Blue Sky Law § 4:24 (citing, e.g., Shappley v. State , 520 S.W.2d 766 [Tex. Crim. App. 1974] ).
Here, an offer to sell was not made from Kansas-in other words, it did not originate from Kansas-under any of these formulations of the definition. Instead, Lundberg and Elzufon retained agents in another state and those agents made an offer on behalf of the company. The offers originated with the California intermediaries. Documentation or other communication sent on behalf of Real Development or the LLCs that supported the offers, which as discussed above could be interpreted to constitute an offer, was sent from Minnesota, not Kansas. No act comprising the sales offer process that underlies these charges against Lundberg and Elzufon occurred in Kansas. While we recognize the offers were extended on behalf of the Kansas LLCs, we find no support for an interpretation of the KUSA that would allow a Kansas court to exercise criminal jurisdiction only because the entity purportedly benefiting from the security issuance was organized under Kansas law and has a place of business in Kansas when no act in connection with the sale or offer occurred in Kansas.
Nexus
Even so, the State, Court of Appeals panel, and amicus all rely on Lintz and Newsome to conclude that Kansas has a sufficient "nexus" to the alleged crimes to invoke Kansas jurisdiction. See Lundberg , 53 Kan. App. 2d at 731, 391 P.3d 49 ("a sale or offer to sell a security originates in Kansas if any portion of the selling process has occurred here or if there is some territorial nexus between the *1121 offer and the State of Kansas"); see also Lintz , 613 F. Supp. at 550 (holding many states' securities laws may simultaneously apply to a single transaction; opinion incidentally mentions territorial "nexus"); Newsome , CCH Blue Sky L. Rptr. ¶ 71,869 (concluding Oklahoma Act applies "when any portion of the selling process of securities covered by the Act occurs in Oklahoma"). We are not persuaded by these cases because jurisdiction arises under the KUSA only if an offer or sale occurred in the state-not just because the transaction has some sort of "nexus" to the state.
We also conclude the panel of the Court of Appeals erred in its analysis because it confused concepts of constitutional long-arm jurisdiction with the statutory jurisdiction granted by the KUSA. The panel emphasized Lundberg's and Elzufon's contacts with Kansas, noting Lundberg and Elzufon formed the Kansas LLCs to raise funds from investors to develop property in Wichita; the LLCs have places of business in Kansas; the LLCs conducted substantial operations in Minnesota and Kansas; some securities issued by the LLCs include choice-of-law and forum-selection provisions designating Kansas law and Kansas courts for resolving disputes; Lundberg signed a promissory note (one that did not relate to the charges at issue on appeal) while in Kansas; a Wichita investor purchased a promissory note issued by a Kansas LLC, even though the criminal charges based on this transaction had been dismissed before the case reached the Court of Appeals; Lundberg and Elzufon were in Kansas "on multiple occasions"; one intermediary traveled to Wichita to meet Lundberg and Elzufon; and, one time, information about investments was faxed from a hotel in Wichita. 53 Kan. App. 2d at 731-32, 391 P.3d 49. The panel then found these contacts substantial enough that Lundberg and Elzufon should have anticipated being brought into court in Kansas.
This type of minimum contacts analysis might satisfy constitutional due process requirements, but it fails to address the statutory language limiting Kansas' jurisdiction over criminal acts arising under the KUSA. See Merriman v. Crompton Corp. , 282 Kan. 433, 465, 146 P.3d 162 (2006) (discussing constitutional due process requirements for jurisdiction; nonresident defendant must purposely establish minimum contacts with forum state; requirement of purposeful availment ensures out-of-state defendant will not be hailed into jurisdiction by unilateral acts of another party).
We appreciate the Court of Appeals' and dissenters' inclination to conclude jurisdiction attaches here. In some ways it seems anomalous that Kansas could not exercise jurisdiction over Lundberg's and Elzufon's conduct as principals and shareholders in business entities they knowingly formed or registered to do business under color of Kansas law. They planned to rehabilitate and manage real property in Kansas, maintained Kansas offices, and issued securities for the Kansas LLCs' benefit. We are concerned this result encourages the unscrupulous to form enterprises under Kansas law, then scrupulously avoid taking any step in the sales or offer process in Kansas to avoid our jurisdiction-particularly in this time when working from anywhere as long as one has a phone and a computer is a common occurrence. But the KUSA is designed to punish the acts taken as part of the sales or offer of a security within the territorial boundaries of Kansas. And here, all of those acts, according to the stipulated facts, occurred outside Kansas. Criminal enforcement, if there is to be any, must lie in one of the jurisdictions in which Lundberg's and Elzufon's actions allegedly occurred.
Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.
Stegall, J., not participating.
James F. Vano, District Judge, assigned.[1]

REPORTER'S NOTE: District Judge Vano was appointed to hear case No. 114,897 and 114,898 vice Justice Stegall under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.