NOT DESIGNATED FOR PUBLICATION

No. 125,752

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DE'ANDREW V. DIXON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Submitted without oral argument. Opinion filed April 5, 2024. Reversed, sentence vacated, and remanded with directions.

*Sam S. Kepfield*, of Hutchinson, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GREEN, P.J., HILL and CLINE, JJ.

PER CURIAM: At De'Andrew V. Dixon's June 2022 resentencing hearing, the district court would not consider Dixon's new durational departure motion. The district court ruled that this court's mandate in Dixon's direct appeal—*State v. Dixon*, 60 Kan. App. 2d 100, 492 P.3d 455 (2021)—gave it only limited jurisdiction to sentence Dixon to 1,306 months' imprisonment.

Dixon does not appeal his convictions. Indeed, at the outset of his appellant's brief, Dixon stresses that the underlying facts of his crimes are irrelevant because his argument

1

on appeal involves the district court's procedure at his resentencing hearing on remand. Dixon specifically challenges the district court's legal reasoning when it imposed his new 1,306-month prison sentence. Dixon contends that the resentencing district court erred as a matter of law when it ruled that the *Dixon* mandate narrowed its jurisdiction on the district court to impose only a 1,306-month prison sentence on him. He asserts that because his original sentences were vacated by the *Dixon* court, the court granted him an entirely new sentencing hearing where he could move for a durational departure.

As determined later in this opinion, we conclude that Dixon's argument is persuasive. Because the law controlling appellate mandates—as applied to the *Dixon* mandate and its opinion—shows that the district court had jurisdiction to consider Dixon's durational departure motion at his resentencing hearing, the district court erred when it ruled otherwise. Thus, we reverse the district court's lack of jurisdiction ruling, vacate Dixon's total controlling 1,306-month prison sentence, and remand Dixon's case to the district court with directions as follows: (1) that the district court must resentence Dixon on all of his convictions and (2) that Dixon may move for a departure at his resentencing hearing.

## Procedural Background

*The district court's interpretation of the* Dixon *mandate and opinion at Dixon's resentencing hearing*

A jury convicted Dixon of two counts of aggravated kidnapping, three counts of aggravated criminal sodomy, two counts of criminal possession of a weapon by a convicted felon, and one count each of rape, kidnapping, and battery. It is undisputed that Dixon committed these crimes against three different women in the fall of 2016 and 2017. It is also undisputed that the State brought its charges against Dixon in two complaints. *Dixon*, 60 Kan. App. 2d at 112.

Before his jury trial, the district court granted the State's motion to consolidate Dixon's two pending criminal cases for trial. 60 Kan. App. 2d at 112. Yet, the State never filed an amended complaint joining Dixon's two criminal complaints into a single complaint. 60 Kan. App. 2d at 137. Then, at his sentencing hearing, the district court sentenced Dixon separately on each complaint. Ultimately, the district court ordered Dixon to serve his sentences for each crime consecutively, and it ordered Dixon to serve his sentences for his two criminal cases consecutively. Thus, the district court sentenced Dixon to a total controlling sentence of 2,045 months' imprisonment for his criminal cases. 60 Kan. App. 2d at 138-39.

Dixon timely appealed his convictions and sentences to this court. On appeal, Dixon argued that under the correct application K.S.A. 2020 Supp. 21-6819(b)(4)—also known as the "'double rule'"—his total controlling sentence for his crimes would "be limited to 1,306 months." 60 Kan. App. 2d at 132. Highly summarized, although this court rejected Dixon's arguments to reverse his convictions, it accepted Dixon's argument that the district court violated the double rule when it sentenced him to 2,045 months' imprisonment. 60 Kan. App. 2d at 140-41. The *Dixon* court held that the district court's application of the double rule violated Dixon's Equal Protection Rights of the Fourteenth Amendment because the only reason he was not receiving the benefit of the double rule was the State's arbitrary decision to file its charges against Dixon in two separate criminal complaints. 60 Kan. App. 2d at 137.

To prove this point, the *Dixon* court explained how the State's arbitrary decision to charge Dixon in two criminal complaints allowed the district court to impose a much longer prison sentence on Dixon:

> "Dixon points out that if the charges were all brought in one charging document, the maximum sentence would be 1,306 months (twice the base sentence of 653 months). But here, the application of the double rule led to a total sentence of 2,045 months

3

between the two cases because Dixon had a base sentence for each case. This difference of more than 700 months, or about 61 years, is the result solely of the number of case numbers attached to the charges at Dixon's consolidated trial. As Dixon argues, this disparity seems to defeat the [Kansas Sentencing Guidelines Act's] purpose of uniformity in sentencing." 60 Kan. App. 2d at 139.

And ultimately, the *Dixon* court stated in its syllabus the following:

"For K.S.A. 2020 Supp. 21-6819(b)(4) to comply with the Equal Protection Clause of the Fourteenth Amendment, when two or more cases are consolidated for trial because all the charges could have been brought in one charging document, and the defendant is convicted of multiple charges at trial, the defendant shall receive the benefit of the statutory double rule at sentencing regardless of whether the convictions arise from multiple counts within a single information, complaint, or indictment." 60 Kan. App. 2d 100, ¶ 12.

As for the *Dixon* court's mandate, immediately after this court made the preceding holding, it relied on this holding to "vacate Dixon's sentences and remand for resentencing consistent with this opinion." 60 Kan. App. 2d at 141. And the court's closing remand directions stated: "Convictions affirmed, sentences vacated, and case remanded with directions." 60 Kan. App. 2d at 141. Afterwards, the Clerk of Appellate Courts filed the mandate and opinion with the district court. This mandate stated Dixon's "convictions are affirmed, sentences vacated, and case remanded with directions."

At the start of Dixon's resentencing hearing on remand, the district court explained its understanding of the mandate. In doing so, the district court cited the two sentences from the *Dixon* opinion stating that the maximum total controlling sentence that it could impose on Dixon without violating the double rule at resentencing would be a sentence of 1,306 months' imprisonment. Then, it relied on those two sentences to make the following ruling: "[T]he direction of the Kansas Court of Appeals is to resentence consistent with this opinion. And the sentence consistent with this opinion is that [the

4

district court] should sentence Mr. Dixon to 1,306 months." During Dixon's resentencing hearing, the district court also repeatedly stated that the opinion "spelled out" that it must sentence Dixon to 1,306 months' imprisonment on remand, which in turn, limited its jurisdiction at Dixon's resentencing hearing to imposing a total controlling sentence of 1,306 months' imprisonment on him.

The State seemingly agreed with the district court's interpretation of the *Dixon* opinion. After the district court outlined its interpretation of the mandate, the prosecutor said, "I would agree with that." Also, the prosecutor told the district court that the "[d]ouble rule only counts for one primary count, and it's going to be the 1,306."

But Dixon, who moved for a durational departure at his original sentencing and resentencing hearing, disagreed with the district court's interpretation of the mandate. When the district court asked Dixon his position, he argued that the *Dixon* court had not limited the district court's jurisdiction at his resentencing hearing to sentencing him to 1,306 months' imprisonment. Dixon stressed that no language in the mandate or opinion stated that the district court must sentence him to a total controlling sentence of 1,306 months' imprisonment. Then, citing the lack of such limiting language, Dixon argued that when the *Dixon* court vacated all of his sentences and remanded his case for resentencing, it granted him an entirely new sentencing hearing at which the district court had jurisdiction to consider his new motion for a durational departure.

Nevertheless, Dixon's arguments about how to interpret the mandate and opinion did not sway the district court. The district court refused to consider Dixon's durational departure motion based on its ruling that the mandate and opinion limited its jurisdiction to imposing a total controlling sentence of 1,306 months' imprisonment on Dixon at his resentencing hearing and nothing else. In denying Dixon's durational departure motion at his resentencing hearing, the district court stressed that the original sentencing court had also denied his departure motion. It explained that because the *Dixon* court had not

5

expressly reversed the original sentencing court's rulings on Dixon's original durational departure motion, it had no "authority" to reconsider the original sentencing court's ruling. Similarly, in Dixon's journal entry of judgment for his resentencing hearing, although the district court checked the box that it denied his new durational departure motion, its comment why it denied Dixon's motion stated that consideration of his motion "was not subject to the remand" because the original sentencing court had denied his original durational departure motion.

Dixon timely appeals his resentencing.

ANALYSIS

*The district court erred when it refused to consider Dixon's durational departure motion at his resentencing hearing.*

When the district court refused to consider Dixon's new durational departure motion at his resentencing hearing, it ruled that it lacked jurisdiction to consider the motion based on its interpretation of the *Dixon* mandate and opinion. Although the district court's ruling focused on the extent of its jurisdiction on remand based on the plain language of the mandate and opinion, the district court's ruling hinged on three distinct but often interrelated principles: (1) the mandate rule, (2) the law of the case doctrine, and (3) the district court's jurisdiction. Dixon's current appeal challenges the district court's reliance on each of these principles.

K.S.A. 20-108—the rule on applying appellate mandates—states:

"An appellate court of this state may require the district court of the county where any action or proceeding shall have originated to carry the judgment or decree of the appellate court into execution; and the same shall be carried into execution by proper proceedings, by such district court, according to the command of the appellate court made therein."

6

Similarly, K.S.A. 60-2106(c) states that an appellate court's mandate "shall be controlling in the conduct of any further proceedings necessary in the district court."

So, when an appellate court remands a case to the district court for further proceedings, K.S.A. 20-108 and K.S.A. 60-2106(c) require the district court to follow all orders in the appellate mandate; this principle is called the mandate rule. Under the mandate rule, "a district court is obliged to effectuate the mandate and may consider only those matters essential to the implementation of the ruling of the appellate court." *State v. Dumars*, 37 Kan. App. 2d 600, 603, 154 P.3d 1120 (2007). Whether a district court complied with an appellate court mandate is a question of law over which this court has unlimited review. 37 Kan. App. 2d at 603.

K.S.A. 20-108 and K.S.A. 60-2106(c) also prevent the district court from relitigating issues already decided on appeal; this principle is called the law of the case doctrine. *State v. Bailey*, 317 Kan. 487, 491, 531 P.3d 520 (2023). The law of the case doctrine "applies not only to matters actually decided in the prior proceedings, but also to matters for which the party failed to seek review in a prior proceeding." *State v. Parry*, 305 Kan. 1189, 1195, 390 P.3d 879 (2017). The purpose of the law of the case doctrine is "'to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.'" *Bailey*, 317 Kan. at 491. This means that "[a]n argument once made to and resolved by an appellate court becomes 'the law' in that case and generally cannot be challenged in a second appeal." 317 Kan. at 491. Whether the law of the case doctrine barred a district court from considering an issue on remand is a question of law over which this court has unlimited review. See *Parry*, 305 Kan. at 1194.

Likewise, because jurisdictional issues are questions of law, this court exercises unlimited review when deciding whether the mandate rule or the law of the case doctrine

limited a district court's jurisdiction upon remand. *State v. Lundberg*, 310 Kan. 165, 170, 445 P.3d 1113 (2019). Thus, each principle that the district court relied on when it ruled that it would not consider Dixon's new durational departure motion—the mandate rule, the law of the case doctrine, and the district court's jurisdiction—involve questions of law over which this court's review is unlimited. As a result, our review over each of Dixon's arguments why the district court erred when it refused to consider his new durational departure motion at his resentencing hearing is unlimited.

As for Dixon's specific appellate arguments, he contends that neither the plain language of the mandate or opinion, nor the laws controlling appellate mandates, support the district court's ruling that it lacked jurisdiction to consider his new durational departure motion. Essentially, Dixon argues that the district court interpreted the mandate too narrowly. He argues that because the *Dixon* court vacated all of his sentences, at his resentencing hearing, the district court had jurisdiction to sentence him anew. Hence, Dixon argues that the mandate and opinion gave the district court jurisdiction to consider his new durational departure motion at his resentencing hearing. Dixon also argues that the law of the case doctrine did not prevent him from moving for a new durational departure motion at his resentencing hearing. He stresses that although the original sentencing court denied his durational departure motion, he never appealed that ruling. So, according to Dixon, when he moved for a durational departure at his resentencing hearing, he did not try to relitigate an issue that had already been decided against him. Instead, he argues that "[t]he order of the Court of Appeals vacating the sentence was *itself* the law of the case, meaning no more and no less than that the district court had to vacate the old sentence and impose a new sentence."

To support his interpretation of the mandate and opinion, Dixon relies on our Supreme Court's decision in *State v. Guder*, 293 Kan. 763, 766, 267 P.3d 751 (2012). He contends that the *Guder* court held that when an appellate court vacates a defendant's sentence for a particular conviction, the appellate court's mandate requires the district

8

court to sentence the defendant anew for that conviction. In other words, Dixon argues that our Supreme Court's precedent in *Guder* proves that when an appellate court vacates a defendant's sentence for a crime and remands for resentencing, the defendant is in the same position as he or she was when originally sentenced for that crime. As a result, he argues that a defendant who has his or her sentence vacated may move for a departure at his or her resentencing hearing. In turn, Dixon asks this court to reverse the district court's jurisdiction ruling, vacate his total controlling 1,306-month prison sentence, and remand his case to the district court for another resentencing hearing where he may move for a durational departure.

In response, the State asserts that "[t]he mandate rule and the law of the case [doctrine] prohibited the district court from considering [Dixon's] request for [a] departure upon remand." The State notes that in *Dixon*, Dixon never directly challenged the district court's denial of his durational departure motion at his original sentencing. Because Dixon never appealed the denial of his original durational departure motion, the State suggests that the law of the case doctrine prevented Dixon from moving for a new durational departure at his resentencing hearing. Additionally, the State argues that because Dixon's only sentencing challenge in his direct appeal was whether the district court's application of the double rule violated his equal protection rights, the *Dixon* mandate only addressed this narrow issue. According to the State, because Dixon raised a narrow issue, the *Dixon* court "narrowly tailored" its mandate and opinion to limit the district court's jurisdiction on remand to correct the double rule violation. So, the State contends that the mandate "was not a blanket remand for resentencing." Rather, because Dixon chose to raise only a double rule violation in his direct appeal, the State maintains that the mandate rule and law of the case doctrine prevented the district court from reviewing Dixon's new durational departure motion at his resentencing hearing. The State further contends that Dixon's reliance on *Guder* is misplaced and that our Supreme Court's decision in *State v. Jamerson*, 309 Kan. 211, 214, 433 P.3d 698 (2019), undermines Dixon's arguments. Alternatively, the State argues that even if the district

9

court erred by refusing to consider Dixon's new durational departure motion at his resentencing hearing, the district court's error was harmless beyond a reasonable doubt under the constitutional harmless error standard explained in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011).

Yet, we conclude that the State's arguments are flawed. Indeed, an analysis of the State's arguments demonstrates that the district court erred when it ruled that this court's mandate and opinion in *Dixon* limited the district court's jurisdiction at Dixon's resentencing hearing to sentence him to 1,306 months' imprisonment. It shows that Dixon's interpretation of the mandate and opinion allowed him to move for a new durational departure at his resentencing hearing. Also, it explains that the district court's ruling that it lacked jurisdiction to consider Dixon's new durational departure motion prejudiced Dixon.

To begin with, the State's arguments ignore that Dixon's goal when arguing his sentences violated the double rule in his direct appeal was for this court to vacate his sentences and grant him a new sentencing hearing. As the *Dixon* court explained when discussing how to remedy the district court's sentencing error, "Dixon argue[d] the proper remedy for the constitutional violation [was] not to invalidate the double rule but to instead extend the benefit of the double rule to his case." 60 Kan. App. 2d at 139. More tellingly, the *Dixon* court "vacate[d] Dixon's sentences" just as Dixon had requested. 60 Kan. App. 2d at 141. In short, in his direct appeal, Dixon's express objective was (1) to persuade this court that his sentences violated the double rule under K.S.A. 2020 Supp. 21-6819(b)(4) and (2) to have this court remand his case for a resentencing hearing after vacating all of his sentences. So, the State's argument that Dixon never contended that his sentences were illegal in his direct appeal is disingenuous.

For this same reason, the State's argument that the law of the case doctrine barred Dixon from moving for a durational departure at his resentencing hearing is flawed.

Dixon wanted the *Dixon* court to vacate all of his sentences and remand to the district court for a new sentencing hearing. 60 Kan. App. 2d at 139. The term "vacate" means "[t]o nullify or cancel; make void; invalidate." Black's Law Dictionary 1862 (11th ed. 2019). Thus, in *Dixon*, when Dixon argued that this court should vacate his sentences and remand his case to the district court for resentencing, he also asked the court to vacate the original sentencing court's other sentencing rulings. So, contrary to the State's argument that the law of the case doctrine prevented Dixon from moving for a new durational departure at his resentencing hearing because he never appealed this issue, Dixon implicitly challenged the district court's denial of his original durational departure motion by raising the double rule argument in his direct appeal.

Next, the State argues that neither *Guder*'s nor *Jamerson*'s precedent applies in this case for two reasons: (1) because Dixon never argued that his sentence was illegal under the revised Kansas Sentencing Guidelines Act (KSGA) in his direct appeal and (2) because "[t]here were no illegal sentences of any kind [in Dixon's case]; thus, nothing needed to be opened back up in full for relitigation" at Dixon's resentencing hearing. In making this argument, the State stresses that violations of a defendant's constitutional rights are not illegal sentences under K.S.A 22-3504—the statute controlling the correction of an illegal sentence under the KSGA. Rather, under K.S.A. 22-3504(c)(1), an illegal sentence is a sentence "that does not conform to the applicable statutory provision, either in character or punishment."

Again, the *Dixon* court held that the double rule under K.S.A. 2020 Supp. 21-6819(b)(4) as applied to Dixon in his original sentences violated his rights under the Equal Protection Clause. 60 Kan. App. 2d at 139. So, it is undisputed that Dixon argued that the district court's original sentences infringed on his constitutional rights in his direct appeal. But the *Dixon* court also held that the double rule under K.S.A. 2020 Supp. 21-6819(b)(4), which is a provision of the KSGA, was "under-inclusive." 60 Kan. App. 2d at 139; see also K.S.A. 2020 Supp. 21-6801 et seq. (stating that K.S.A. 21-6801

11

through 21-6824 are KSGA provisions). So, although the *Dixon* court never explicitly stated that Dixon's original sentences were illegal under the KSGA, the *Dixon* court implicitly ruled that his sentences were illegal under the KSGA when it determined that his sentences violated K.S.A. 2020 Supp. 21-6819(b)(4)'s double rule.

Notwithstanding this implicit ruling, the State's arguments about Dixon's reliance on *Guder* are shortsighted. The issue before our Supreme Court in *Guder* was "whether a district court may modify a previously imposed sentence on one conviction following a remand from an appellate court for resentencing based on a different conviction." 293 Kan. at 766. On remand from this court, the district court modified Guder's sentence for a conviction that this court did not vacate—Guder's possession of drug paraphernalia conviction. The only sentence that this court vacated on appeal was Guder's sentence for manufacturing a controlled substance. 293 Kan. at 764. In deciding whether the district court erred, our Supreme Court stressed that nothing under the KSGA "allow[ed] resentencing on other convictions following the vacating of a *sentence* on appeal." 293 Kan. at 766. It stressed that it found "no language from the legislature allowing a district court to modify any of the sentences that were not vacated on appeal." 293 Kan. at 767. And when interpreting the plain language of K.S.A. 21-4720(b)(5), now K.S.A. 21-6819(b)(5), it stressed that it would "not add words to the statute that would provide jurisdiction [to the district court] to resentence on other counts when only the sentence on the primary conviction [was] vacated." 293 Kan. at 766.

Based on this analysis, the *Guder* court held that the district court had jurisdiction to modify only Guder's manufacturing a controlled substance sentence that this court had vacated on appeal; it had no jurisdiction to modify Guder's possession of drug paraphernalia sentence that this court had not vacated on appeal. 293 Kan. at 765, 767. Then, our Supreme Court vacated the district court's errant modification of Guder's possession of drug paraphernalia conviction. 293 Kan. at 767.

12

So, *Guder*'s precedent supports that when an appellate court vacates the sentence of a defendant, that defendant is entitled to a new sentencing hearing on the vacated sentence. Although our Supreme Court vacated the district court's modification of Guder's sentence for possessing drug paraphernalia, it did not vacate or condemn the district court's resentencing of Guder on his manufacturing a controlled substances conviction since this court had vacated that sentence in Guder's direct appeal. 293 Kan. at 767. In addition, by stating that it would not add words to K.S.A. 21-4720(b)(5) "that would provide jurisdiction [to the district court] to resentence on other counts when only the sentence on the primary conviction [was] vacated," our Supreme Court implicitly held that the district court has jurisdiction to resentence a defendant when an appellate court vacates that defendant's sentence on appeal. 293 Kan. at 766.

Next, although the State argues that the *Jamerson* decision undermines Dixon's arguments because its precedent only applies to defendants whose sentences were illegal under the KSGA, our Supreme Court's analysis in *Jamerson* establishes that whether Dixon's original sentences were illegal under the KSGA or for some other reason does not affect this court's review or the district court's procedure at resentencing hearings. In *Jamerson*, our Supreme Court considered the State's argument that *Guder*'s precedent did not apply in Jamerson's case because Guder's case "involved the court's authority to modify a nonvacated portion of the sentence on remand from an appellate court" while Jamerson's case involved a resentencing court's finding that Jamerson's sentence was illegal under K.S.A. 22-3504. 309 Kan. at 215. Although Guder never explicitly argued that his sentence was illegal or even mentioned K.S.A. 22-3504 in his direct appeal, the *Jamerson* court called Guder's sentence illegal. 309 Kan. at 216; see *Guder*, 293 Kan. 763. In addition, the *Jamerson* court recognized that K.S.A. 22-3504 was not a provision under the KSGA. 309 Kan. at 215.

13

All the same, after it found that K.S.A. 22-3504 provided no guidance on correcting illegal sentences at a defendant's resentencing hearing, it turned "to the KSGA for guidance." 309 Kan. at 216. Then, it held the following:

"Reading K.S.A. 22-3504 for the correction of an illegal sentence and the KSGA together would logically advise that correcting an illegal sentence should follow the same statutory rules as resentencing after a remand. Procedurally, we find no reason a district court's conclusion (that a sentence is illegal) is different in any legally significant way from the holding by this court that a sentence is illegal under K.S.A. 22-3504. In either scenario the sentence must be corrected to become one complying with the KSGA." 309 Kan. at 216.

Thus, in *Jamerson*, our Supreme Court ruled that whether a court determines that a defendant's sentence is illegal under the KSGA or a court determines that a defendant's sentence is illegal for some other reason, the district court applies the same procedural rules when resentencing a defendant. The district court must resentence the defendant so his or her sentence is legal. As a result, the State's argument that the *Jamerson* decision supports that the district court lacked jurisdiction at Dixon's resentencing hearing to consider his new durational departure motion is repugnant to reason. Under *Jamerson*'s precedent, once a court determines that a defendant's sentence is illegal for any reason, the court must use the same procedures to resentence the defendant to a legal sentence. So, although the State has relied on *Jamerson* to support its arguments, *Jamerson*'s precedent actually supports Dixon's argument that the district court had jurisdiction to resentence him anew after this court vacated all of his sentences in *Dixon*.

To summarize, so far, none of the State's arguments support the district court's interpretation of the *Dixon* mandate and opinion. In his direct appeal, Dixon argued that this court should vacate all of his sentences and remand his case to the district court for an entirely new sentencing hearing because his sentences were illegal. Because Dixon asked this court to vacate all of his sentences and remand for a resentencing hearing,

14

Dixon asked the *Dixon* court to nullify all of the district court's rulings at his original sentencing. So, the fact that Dixon never directly challenged the denial of his durational departure motion at his original sentencing hearing is irrelevant. Put another way, Dixon was not barred from moving for a new durational departure motion under the law of the case doctrine since he explicitly asked for this court to vacate his sentences and grant him a new sentencing hearing. Our Supreme Court's precedent in *Guder* establishes that when an appellate court vacates a defendant's sentence, the district court obtains jurisdiction to resentence the defendant on the vacated sentence. 293 Kan. at 767. Meanwhile, our Supreme Court's precedent in *Jamerson* establishes that it is irrelevant whether Dixon's sentences were illegal under the KSGA or for some other reason because no matter why a defendant's sentence is illegal, the district court must apply the same procedures when resentencing a defendant for any illegal sentence. And the illegal sentence must be corrected to comply with KSGA. *Jamerson*, 309 Kan. at 216.

At this point, the parties' remaining arguments regarding the district court's specific interpretation of the *Dixon* mandate and opinion involve the mandate rule. Once more, Dixon argues that the district court interpreted the mandate and opinion with a myopic view. On the other hand, the State argues that the district court had to interpret the mandate and opinion narrowly based on the narrow issue Dixon raised in his direct appeal.

Nevertheless, the district court's interpretation of the mandate is flawed. Nothing within the mandate or opinion limited the district court's jurisdiction at Dixon's resentencing to imposing only a total controlling 1,306-month prison sentence on Dixon. Rather, the two sentences in the *Dixon* opinion that the district court relied on when it ruled that the mandate gave it limited jurisdiction to impose a total controlling 1,306-month prison sentence on Dixon simply stated that it was the maximum total controlling sentence it could impose on Dixon at his resentencing without violating the double rule. To review, the *Dixon* court's first reference to a 1,306-month prison sentence stated that

15

"if Dixon prevails on his constitutional claim, his sentence will be limited to 1,306 months." 60 Kan. App. 2d at 132. And the *Dixon* court's second reference to a 1,306-month prison sentence stated: "Dixon points out that if the charges were all brought in one charging document, the maximum sentence would be 1,306 months (twice the base sentence of 653 months)." 60 Kan. App. 2d at 139.

So, in both its references to a 1,306-month prison sentence, the *Dixon* court merely provided guidance to the district court how to avoid violating the double rule again when resentencing Dixon. The *Dixon* court never said that the district court *must* sentence Dixon to 1,306 months' imprisonment. It never said that the district court *should* sentence Dixon to 1,306 months' imprisonment. Instead, it told the district court the maximum prison sentence it could impose on Dixon at his resentencing. So, when the *Dixon* court vacated Dixon's sentences and remanded his case for resentencing, it authorized, that is, gave the district court jurisdiction, to entirely resentence Dixon. In short, there is no reasonable explanation why the district court interpreted the mandate and opinion as limiting its jurisdiction to imposing only a total controlling 1,306-month prison sentence on Dixon.

In its final argument, the State contends that even if the district court erred by not considering Dixon's new durational departure motion at his resentencing hearing, the district court's error was harmless beyond a reasonable doubt. The State seemingly believes that the district court's refusal to consider Dixon's durational departure motion was harmless for the following reasons: (1) because the facts of Dixon's crimes are "abhorrent"; (2) because Dixon's new durational departure motion repeated some of the arguments in his original departure motion; and (3) because the district court indicated that it would deny his motion if it had considered it.

But the State's harmless error argument is fatally flawed. At sentencing, a defendant has a statutory right under K.S.A. 21-6815(c)(1) to move for a durational

16

departure. So, a district court's refusal to consider a defendant's durational departure motion at sentencing when it has jurisdiction to do so is not harmless. It deprives the defendant of his or her right to request a shorter prison sentence. Because legislative grace is woven within the Kansas sentencing statutes, a defendant is entitled to move for a departure under K.S.A. 21-6815(c)(1) at his or her sentencing hearing.

Regarding the State's argument that Dixon repeated some of the arguments that he made in his original durational departure motion in his new durational departure motion, as explained already, when the *Dixon* court vacated Dixon's sentences, he was entitled to an entirely new sentencing hearing. So, it is irrelevant that Dixon made some of the same arguments in both departure motions. And regardless, Dixon made new arguments in his durational departure motion at his resentencing hearing. This includes arguing that he was entitled to a durational departure because of his good behavior in prison since his original sentencing hearing in October 2018.

As for the State's argument that any error resulting from the district court's refusal to consider Dixon's durational departure motion was harmless because the district court indicated that it would deny Dixon's motion if it had considered it, the State ignores the plain language of the district court's ruling. The State points out that when the district court judge refused to consider Dixon's durational departure motion, the judge told Dixon the following:

> "I did find that the remand is specific and gives the Court specific directions on how to proceed. I guess arguably the easier thing to do would be to say I'll consider the departure and deny it, but I think there are some times where you don't necessarily take the easy way out."

Thus, although the district court alluded that it would have denied Dixon's departure motion, its actual holding was that it lacked jurisdiction to consider the motion.

17

Additionally, the State's arguments ignore the district court's explicit rulings at Dixon's sentencing hearing and in his resentencing journal entry of judgment. In short, his resentencing hearing and resentencing journal entry of judgment point out that the district court ruled that it lacked jurisdiction to consider Dixon's new durational departure motion.

Once more, at Dixon's original sentencing hearing, the sentencing judge denied his motion for a durational departure. Then, at Dixon's resentencing hearing, the district court responded to his argument about considering his new duration departure motion by pointing out this fact. It explained that from its interpretation of the mandate and opinion, it had no authority to reconsider the original sentencing court's denial of his durational departure motion. Afterwards, in Dixon's journal entry of judgment for his resentencing hearing, the district court repeated its ruling. Although it checked the box on Dixon's journal entry of judgment that it had "denied" his new durational departure motion, immediately after checking this box, the district court explained its ruling as follows: "Motion was denied by [the original sentencing court] on 10/01/18. [The district court] found that the matter was not subject to the remand." As a result, despite checking the box that the district court had denied "[d]efendant's motion for departure," the district court's comment about Dixon's new durational departure motion stated that "[the district court] found that the matter was not subject to the remand," that is, that the district court lacked jurisdiction to consider Dixon's new durational departure motion. So, although the district court's statements implied that it would have denied Dixon's durational departure motion, it nonetheless ruled that it lacked jurisdiction to consider his new durational departure motion.

Thus, we point out that the district court has come to two incompatible propositions about Dixon's new motion for departure. First, the district court denied Dixon's new motion for departure in its journal entry of judgment, dated August 29, 2022. Second, the district court maintained that it lacked jurisdiction to consider Dixon's

18

new motion for departure from the *Dixon* remand. These two opposing propositions are logically contradictory. So, if the first is true (the district court had jurisdiction to deny Dixon's new motion for departure), the second is false; if the first is false, the second is true (the district court lacked jurisdiction to consider Dixon's new motion for departure). So, these two contradictory propositions cannot be correlated as two steps in an argument. Indeed, the two propositions can never be true together, or false together: one is always true and the other always false. It is like saying, for example, "*It is both raining and not raining in the same place and at the same time*." This is a logical contradiction in reasoning.

Finally, the State's harmless error argument is inconsistent with this court's previous rulings in *State v. Brown*, No. 125,482, 2023 WL 6172076 (Kan. App. 2023) (unpublished opinion), and *State v. McMillan*, No. 124,726, 2023 WL 176653 (Kan. App. 2023) (unpublished opinion). Indeed, Brown's legal issue at resentencing is identical to Dixon's legal issue at resentencing.

In Brown's direct appeal to this court, this court vacated Brown's sentences because of a criminal history error. *State v. Brown*, No. 120,590, 2020 WL 1897361, at *7 (Kan. App. 2020) (unpublished opinion), *aff'd* 314 Kan. 292, 498 P.3d 167 (2021). In *Brown*, after our Supreme Court affirmed this court's decision to vacate Brown's sentences because of the criminal history score error, it remanded Brown's case for resentencing consistent with this court's decision. *Brown*, 314 Kan. at 308. But at his resentencing hearing, the district court refused to consider Brown's new durational departure motion. *Brown*, 2023 WL 6172076, at *1. In addition to citing our Supreme Court's decision in *Guder* and *Jamerson*, this court explained that *McMillan* supported Brown's argument that the district court had to consider his departure motion at resentencing:

19

"Brown's reliance on *State v. McMillan*, No. 124,726, 2023 WL 176653 (Kan. App. 2023) (unpublished opinion), *rev. granted* April 20, 2023, is well-placed. *McMillan* concluded our Supreme Court's precedent and the plain language of the KSGA gives a district court authority to reconsider a departure motion on remand for resentencing. 2023 WL 176653, at *5. In *State v. Guder*, 293 Kan. 763, 766, 267 P.3d 751 (2012), our Supreme Court held a district court has limited jurisdiction on remand for resentencing to modify sentences 'to correct arithmetic or clerical errors, *to consider or reconsider departures from presumptive sentences*, or to modify sentences by reinstating previously revoked probations.' (Emphasis added.) Further, the plain language of K.S.A. 2022 Supp. 21-6819(b)(5) provides: 'Upon resentencing, if the case remains a multiple conviction case the court shall follow all of the provisions of this section concerning the sentencing of multiple conviction cases.' In other words, the KSGA makes no distinction in the sentencing procedures between original sentencing and resentencing in multiple conviction cases.

"At resentencing, a district court must impose a sentence compliant with the KSGA. *State v. Jamerson*, 309 Kan. 211, 216, 433 P.3d 698 (2019). 'In doing so, the court has to exercise its independent judgment—within the limitations imposed by the KSGA—to determine the appropriate sentence.' 309 Kan. at 218. The *McMillan* panel concluded this authority includes reconsidering a departure motion on remand for resentencing because the district court must impose a sentence in the appropriate KSGA grid box unless it finds substantial and compelling reasons to depart. 2023 WL 176653, at *5; see K.S.A. 2022 Supp. 21-6815(a). Here, the district court erred in finding it had no authority to reconsider the departure motion which had been denied at Brown's original sentencing. Accordingly, we remand for resentencing so the district court can consider the departure motion if renewed at resentencing. [Citation omitted]." *Brown*, 2023 WL 6172076, at *3.

In summary, this court's decision in *Brown* and *McMillan* further shows that the district court erred when it ruled it lacked jurisdiction under the *Dixon* mandate and opinion. When sentencing a defendant, the district court must follow the rules outlined in the KSGA. Those rules include that if the defendant moves for a departure motion at sentencing, then the district court must consider that departure motion. Here, because the district court refused to consider Dixon's new departure motion at his resentencing

hearing, citing a lack of jurisdiction when it actually had jurisdiction, the district court necessarily erred by not considering Dixon's new departure motion. And because Dixon's durational departure motion concerned the length of his sentence, which involves his liberty rights, it necessarily follows that the district court's refusal to consider his motion implicated his constitutional rights. As a result, the State cannot establish that the district court's ruling that it lacked jurisdiction to consider Dixon's new durational departure motion constituted harmless error.

CONCLUSION

Thus, we reverse the district court's lack of jurisdiction ruling, vacate Dixon's total controlling 1,306-month prison sentence, and remand Dixon's case to the district court for another resentencing hearing with directions. These directions are as follows:  (1) that the district court must resentence Dixon on all of his convictions and (2) that Dixon may move for a departure at his resentencing hearing.

Reversed, sentence vacated, and remanded with directions.